IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**MARION K.,**[1]

       Plaintiff,

v.

**COMMISSIONER OF SOCIAL SECURITY**,

       Defendant.

Civ. No. 6:19-cv-01180-AA

**OPINION & ORDER**

AIKEN, District Judge:

Plaintiff Marion K. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying benefits. The decision of the Commissioner is AFFIRMED and this case is DISMISSED.

## BACKGROUND

On January 26, 2016, Plaintiff filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income, both alleging disability beginning on January 26, 2016. Tr. 15. The application was denied initially and upon reconsideration and, at Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ") on July 19, 2018. *Id.* On August 23, 2018, the ALJ issued a decision

---

[1] In the interest of privacy, this opinion uses only first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION & ORDER

finding Plaintiff not disabled. Tr. 27. On June 13, 2019, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Tr. 1. This appeal followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011).

> The five-steps are: (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25; *see also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Bustamante*, 262 F.3d at 953. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54.

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis. At step one, the ALJ found that Plaintiff met the insured status requirements through December 31, 2022 and had not engaged in substantial gainful activity since the alleged onset date of January 26, 2016. Tr. 17.

At step two, the ALJ found that Plaintiff had the following medically determinable impairments: acute episode hypoxemia (low oxygen level); chronic obstructive pulmonary disease ("COPD") with continued smoking; episode of cardiomyopathy, resolved; and mild scoliosis. Tr. 18. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. *Id.*

The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work with the following additional limitations: Plaintiff is capable of occasional climbing of stairs/ramps; no climbing of ladders/ropes/scaffolds, and frequent (not continuous) balancing, stooping, kneeling, crouching, and crawling; she is capable of occasional overheard reaching bilaterally; she must avoid concentrated exposure to wetness, humidity, and hazards such as unprotected heights and dangerous machinery; and avoid more than moderate exposure to extreme cold and respiratory irritants. Tr. 19-20.

At step four, the ALJ determined that Plaintiff was capable of performing past relevant work as a housekeeping cleaner. Tr. 25-26. As a result, the ALJ determined that Plaintiff was not disabled without reaching step five of the sequential analysis. Tr. 26-27.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence "means such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

When the evidence before the ALJ is subject to more than one rational interpretation, courts must defer to the ALJ's conclusion. *Batson*, 359 F.3d at 1198 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). A reviewing court, however, cannot affirm the Commissioner's decision on a ground that the agency did not invoke in making its decision. *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## DISCUSSION

Plaintiff asserts the ALJ erred by (1) failing to find that Plaintiff's impairments met or equaled a listed impairment; (2) discounting Plaintiff's subjective symptom testimony; and (3) that the ALJ improperly assessed the evidence in formulating the RFC.

### I.   Step Three

Plaintiff asserts that the ALJ erred by failing to find that Plaintiff's COPD met the requirements of listing 3.02A. At step three, the ALJ is tasked with determining if one or more of a claimant's severe impairments "meets or equals" one of the presumptively disabling impairments listed in the SSA regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "If you have an impairment which meets the duration requirement and is listed in [20 C.F.R. Part 404, Subpart

P,] [A]ppendix 1 or is equal to a listed impairment, the SSA will find you disabled without considering your age, education, and work experience." 20 C.F.R. §§ 404.1520(d), 416.920(d). Listed impairments are "purposefully set at a high level of severity" and are held to "strict standards because they automatically end the five-step inquiry, before residual functional capacity is even considered." *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013). "For a claimant to qualify for benefits by showing that his unlisted impairment or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990).

Here, Plaintiff asserts that her COPD meets the requirements of listing 3.02A. Listing 3.00A describes "impairments resulting from respiratory disorders based on symptoms, physical signs, laboratory test abnormalities, and response to a regime of treatment prescribed by a treating source." *Sargent v. Colvin*, No. 3:12-cv-01905-AA, 2014 WL 792154, at *3 (D. Or. Feb. 23, 2014) (internal quotation marks and citation omitted).

Listing 3.02A for chronic pulmonary insufficiency, provides a table for interpreting the results of spirometry tests to determine whether a person is disabled. The table articulates forced expiratory volumes ("FEV") that correspond to the claimant's height without shoes. 20 C.F.R. § 404 Subpart P., App'x 1, § 3.02A. If the claimant's FEV is below the level corresponding to their height, the person is considered disabled. 20 C.F.R. § 404 Subpart P, App'x 1., § 3.00E. If, after testing, the claimant's FEV is below 70% of the predicted normal value, the claimant must use a bronchodilator, unless contraindicated, and then repeat the test. *Id.* However, under the plain language of the listing, disability determination are made looking at the highest FEV value: "We use your highest FEV value to evaluate your respiratory disorder under 3.02A . . . regardless of

whether the values are from the same forced expiratory maneuver or different forced expiratory maneuvers." 20 C.F.R. § 404 Subpart P, App'x 1. § 3.00E.

Plaintiff's height is 63 inches. Tr. 817. In the table for listing 3.02A, the FEV for a female of Plaintiff's height and aged 20 or older is 1.25. 20 C.F.R. § 404 Subpart P, App'x 1, § 3.02A. On January 10, 2017, Plaintiff underwent a pulmonary function analysis which yielded an FEV of 0.84. As Plaintiff points out, this is below the FEV listing for a woman of Plaintiff's age and height. However, the ALJ relied on the testimony of medical expert James McKenna, M.D. who testified that Plaintiff had demonstrated FEV values of 1.62 to 1.68. Tr. 43. This is borne out by the record. In May 2016, Plaintiff performed pre and post bronchodilator spirograms and Plaintiff had an FEV of 1.62 and a post bronchodilator result of 1.68. Tr. 667-68. Dr. McKenna testified that Plaintiff's 0.84 result from January 10, 2017 was "quite off" and "clearly had to be done during an exacerbation and is not representative oof the total course of her status." Tr. 43. Accordingly, Dr. McKenna testified that Plaintiff did not meet the requirements for listing 3.02A. Tr. 44.

As noted, the ALJ uses the highest FEV result assessing whether a claimant meets the requirements of listing 3.02A. *See Sargent*, 2014 WL 792154, at *3 (holding "the ALJ correctly relied on the higher post-bronchodilator FEV in determining that plaintiff does not meet or equal the listing criteria."). The application of the listing requirements are held to strict standards and the Court concludes that the ALJ did not err in finding that Plaintiff did not meet the requirements of listing 3.02A at step three of the sequential analysis.

## II.  Subjective Symptom Testimony

Plaintiff asserts that the ALJ erred by discounting her subjective symptom testimony. To determine whether a claimant's testimony is credible, an ALJ must perform a two-stage analysis. 20 C.F.R. § 416.929. The first stage is a threshold test in which the claimant must produce

objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). At the second stage of the credibility analysis, absent evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of symptoms. *Id*.

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (internal quotation marks and citation omitted). An ALJ may use "ordinary techniques of credibility evaluation" in assessing a claimant's credibility, such as prior inconsistent statements concerning the symptoms, testimony that appears less than candid, unexplained failure to seek treatment or follow a prescribed course of treatment, or a claimant's daily activities. *Id.*

At the hearing, Plaintiff testified that she was working as a clothing sorter and hanger for five hours per day at the Salvation Army. Tr. 51-52, 59. Plaintiff starts to slow down about three hours into her shift and will hide in the bathroom to rest. Tr. 52. Plaintiff testified that on a slow day, she might need her inhaler only once per shift, but that on busy days she needed to use to as many as seven times. Tr. 53. Plaintiff testified that she needs nebulizer treatments six times per day when she was working. *Id.* Plaintiff needs fewer breathing treatments when she is less active. Tr. 57.

Plaintiff estimated that she could walk a quarter mile before needing to rest and use her inhaler. Tr. 52. Lifting, pushing, pulling, and walking leave Plaintiff short of breath. Tr. 54. Plaintiff's heart medications sometimes make her dizzy. Tr. 55. Plaintiff sleeps poorly, which

exacerbates fatigue. Tr. 56. In terms of daily activities, Plaintiff will sweep, wash dishes, and do laundry, although she testified that she takes rest breaks in between tasks. Tr. 57-58.

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" Tr. 21.

First, the ALJ found that "the objective medical evidence and the record as a whole" did not support a more restrictive RFC. Tr. 21.[2] "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). In May 2016, Plaintiff's pulmonologist assessed moderately severe obstruction with no reversibility with bronchodilator. Tr. 667. An assessment in January 2017 found "Severe obstruction no restriction mild decrease in diffusion," and noted that an earlier examination has shown "severe centrilobular emphysema." Tr. 815. However, other examinations revealed more normal findings. Tr. 575 (December 2015 record notes normal respiration); 606 (January 2016 record notes nonlabored respiration with clear breath sounds throughout); 610 (October 2015 record notes nonlabored respiration with clear breath sounds throughout); 614 (October 2015 noting same); 618 (October 2015 noting same); 651 (March 2016 noting same); 680 (May 2016 record noting dyspnea with moderate or intense exercise and productive coughing and wheezing); 690 (July 2016 hospital note recording normal effort and breathing, but cough, shortness of breath, and wheezing); 713 (November 2017 noting normal effort and auscultation and no coughing); 722 (May 2017 note recording normal auscultation, normal effort, and no chest wall tenderness); 766 (December 2017 note recording

---

[2] Plaintiff does not challenge the ALJ's findings concerning the improvement in Plaintiff's cardiac symptoms, but instead focuses on the ALJ's conclusions regarding Plaintiff's pulmonary impairments. Pl. Br. 10-11.; Pl. Reply 4.

Page 8 – OPINION & ORDER

nonlabored respiration, clear breath sounds, no rales, no wheezing, and no rhonchi); 770 (November 2016 record, noting same); 774 (November 2016 record noting same).

As noted, the ALJ may not reject Plaintiff's testimony based solely on a lack of corroboration by the objective medical records, but the Court concludes that the ALJ did not err by considering treatment notes revealing normal respiration as part of his assessment of the Plaintiff's testimony.

The ALJ also found that Plaintiff's testimony was contradicted by her activities of daily living and "most significantly," by her part-time work at the Salvation Army. Tr. 24. "An ALJ may consider any work activity, including part-time work, in determining whether a claimant is disabled." *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020). Here, Plaintiff worked five-hour shifts, five days per week sorting and hanging clothes and working on the sales floor. Tr. 24. The vocation expert testified that Plaintiff's work at the Salvation Army was "medium exertional level with an SVP of 2, unskilled." Tr. 61. The ALJ concluded that this level of work "belies the severity of impairment [Plaintiff] alleges." Tr. 24. "Even if the claimant is performing this work at slightly below substantial gainful activity (SGA) earnings level, the fact that she is currently working at an exertion level that exceeds light exertional capacity demonstrates that she should be able to perform work at least at the light residual functional capacity level[.]" Tr. 24. The Court concludes that this is a reasonable reading of the record and declines to find that the ALJ erred in his consideration of Plaintiff's work.

On this record, the Court concludes that the ALJ did not err by discounting Plaintiff's subjective symptom testimony.

## CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is AFFIRMED and this case is DISMISSED.

It is so ORDERED and DATED this ___16th___ day of February 2023.

/s/Ann Aiken
ANN AIKEN
United States District Judge